# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

CHRISTINE G.,[1]

       Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

Civ. No. 1:18-cv-01853-MC

**OPINION & ORDER**

McSHANE, District Judge:

Plaintiff Christine G. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

On April 22, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, both alleging disability beginning June 10, 2010. Tr. 15. The claims were denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on July 17, 2017. *Id.* On October 25, 2017, the ALJ issued a decision finding Plaintiff not disabled. Tr. 25. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

# DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

# THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 10, 2010. Tr. 17. The

ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the back; an anxiety disorder; and a disorder of the nervous system. *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 18.

The ALJ determined Plaintiff had the RFC to perform light work with the following additional restrictions: she can lift and/or carry twenty pounds occasionally and ten pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight hour workday with regular breaks; she is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; she can never climb ladders, ropes, or scaffolds; she can frequently, but not constantly handle and finger bilaterally; she can tolerate only occasional exposure to workplace hazards such as unprotected heights and exposure to moving machinery; she can have only occasional exposure to workplace vibration; and she can tolerate frequent, but not constant contact with the general public. Tr. 20.

The ALJ noted Plaintiff was 33 years old on the alleged onset date and has at least a high school education and is able to communicate in English. Tr. 24. The ALJ found Plaintiff is unable to perform past relevant work. Tr. 23. Based on her RFC, the ALJ determined Plaintiff was able to perform work as an electrical accessories assembler, a laundry sorter, and a basket filler. Tr. 25. As a consequence, the ALJ determined Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) failing to properly weigh the medical opinion evidence; (2) improperly discounting Plaintiff's subjective symptom testimony; and (3) improperly rejecting lay opinion and "other" medical source opinion testimony.

### I. Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a

treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

In this case, Plaintiff contends that the ALJ erred by failing to credit the opinion of examining physician Timothy Wilson, M.D. Dr. Wilson examined Plaintiff on April 29, 2011, as part of the workers compensation process. Tr. 21, 339-40. Dr. Wilson found that Plaintiff was able to perform "various activities such as keyboarding, filing and lifting; however, the endurance was questionable." Tr. 339. Dr. Wilson observed that Plaintiff was unable to sit at her self-evaluation for more than thirty minutes at a time. *Id.* Dr. Wilson opined that Plaintiff was able to do "light-type" work. *Id.* Dr. Wilson limited Plaintiff to lifting no more than fifteen pounds, but noted that "testing up to 15 pounds was self-limiting and the patient reported she was not able to lift due to pain complaints," and the therapist "felt the patient might be able to lift more but felt that she limited herself." Tr. 339-40.

Dr. Wilson reported that Plaintiff would require workplace accommodations, such as an ergonomic chair and keyboard, as well as the ability to change positions after twenty minutes, with no requirement that she maintain position for more than thirty minutes. Tr. 340.

When asked whether Plaintiff had the capacity for endurance or tolerance beyond a four-hour day, Dr. Wilson was equivocal:

> For over a year, the patient has been off work or on limited duty, working no more than four hours per day. It is very questionable whether she can do more than four hours per day due to pain complaints and the use of pain medication to do effective work activities. My medical opinion is that she probably could do more than four hours of work per day, but I question whether she could do this effectively with levels of pain.

Tr. 340.

In his summary, Dr. Wilson concluded Plaintiff could do light work, particularly clerical work. "The patient can do this for four hours with the potential of increasing to eight hours once

she gets back into the workforce. Between four to eight hours is questionable whether she can effectively do the work with the use of pain medication since there is a potential for an increase in pain and the need to take pain medication." Tr. 340.

In formulating Plaintiff's RFC, the ALJ summarized Dr. Wilson's report, particularly with respect to Plaintiff's postural limitations, the need to change positions, and the restriction to lifting no more than fifteen pounds. Tr. 21. The ALJ noted that Dr. Wilson had found Plaintiff capable of performing "light activity such as clerical work," but did not mention Dr. Wilson's findings as to whether Plaintiff could work more than four hours per day. *Id.* The ALJ did not expressly credit or discount Dr. Wilson's conclusions. *Id.*

Plaintiff contends that the ALJ erred by failing to include the limitations identified by Dr. Wilson in Plaintiff's RFC without providing a basis for rejecting Dr. Wilson's opinion. First, Dr. Wilson limited Plaintiff to lifting no more than 15 pounds, Tr. 21; 339-40. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 404.1567, and so a limitation to lifting no more than fifteen pounds would be inconsistent with such work and with Plaintiff's RFC. Tr. 20. The Government points out that Dr. Wilson's reported indicated that Plaintiff might have been self-limiting during the examination, but the ALJ accepted the limitation assessed by Dr. Wilson without comment. Tr. 21. The ALJ is responsible for resolving contradictions in the medical record and this Court cannot make independent findings concerning the evidence. The limitation to lifting no more than fifteen pounds was not included in any VE hypothetical and so the Court has no basis for finding, as the Government argues, that the error was harmless.

With respect to the length of time Plaintiff would be able to work, Dr. Wilson was equivocal. Dr. Wilson opined that Plaintiff could work for four hours, with the "potential" for

increasing to eight hours and that Plaintiff could "probably" work more than four hours, but repeatedly stressed that it was "very questionable" whether Plaintiff could work more than four hours effectively due to her pain and the use of pain medication. Tr. 340. The ALJ did not mention this limitation in his summary of Dr. Wilson's opinion. Tr. 21. The Government contends that this opinion is not inconsistent with full-time employment, but an RFC is meant to assess an individual's ability to do work on a "regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling (SSR) 96-8p, 61 F.R. 34474-01, *available at* 1996 WL 362207. Given the ambiguity of Dr. Wilson's conclusions, the Court cannot conclude that the ALJ's failure to address this aspect of the opinion was harmless.

## II.     Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle*, 533 F.3d at 1160.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of

credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

During the hearing, Plaintiff testified that she suffered from back pain; neuropathy and pain in her arms; and difficulty sitting and standing. Tr. 50. Plaintiff testified that she has tightness and pain in her left shoulder and rated her spinal pain at a five or six out of ten. Tr. 55-56. Plaintiff reported that she needs to lay down to find relief from her symptoms and that she needs to do this up to twelve times per day. Tr. 56. Plaintiff suffers back spasms throughout the day. Tr. 57. Plaintiff estimated that she could concentrate for between two and four hours due to her pain. Tr. 60. Plaintiff has difficulty sleeping due to pain and the need to shift positions and estimated that she sleeps between four and five hours per night, but still wakes tired. Tr. 61.

Plaintiff testified that she has "very little strength" in her hand and difficulty reaching over her head or holding her arms out. Tr. 57. She reported that she would not be able to work in a job that required having her arm out in front or overhead for a sustained length of time. *Id.* She estimated that she could "almost" lift or carry a gallon of milk with her left arm and "two bags of groceries" with her right side, but that she could not sustain the effort for even a third of a work shift. Tr. 60. Plaintiff testified that she had pins and needles in her left hand and that she can only use her left hand for five to ten minutes. Tr. 63. She reported similar, but less severe difficulties in her right hand. Tr. 63-64.

Plaintiff testified that she has neuropathy in her legs and feet with burning and numbness from her calves to her toes. Tr. 58. Plaintiff reported that she needs to elevate her feet to get relief from the sensation and that she would need to have her feet elevated any time she was sitting. Tr. 58-59. Plaintiff estimated that she could sit for half an hour and stand for between five and ten

minutes, but that she would need to shift positions. Tr. 60. She testified that she could walk for a city block. *Id.*

Plaintiff testified that in 2016 she began suffering from debilitating migraines between two and five times per week, which leave her bedridden for between four hours and a full day. Tr. 50-51. Plaintiff treats her migraines with Topamax but reported that it was not working very well. Tr. 51. Plaintiff also reported that side effects of Topamax were drowsiness and anorexia. Tr. 54. Plaintiff's migraines could be triggered by lack of sleep, stress, or back pain. Tr. 51. If Plaintiff has a migraine, she testified that she would be unable to work or drive due to vertigo. Tr. 54.

In terms of social functioning, Plaintiff reported that she "often" visits her mother, who is suffering from leukemia. Tr. 51-52. These visits are sometimes overnight, but they are social in nature and Plaintiff does not provide care to her mother during the visits. Tr. 52. Plaintiff has difficulty with housework and is sometimes unable to any housework, particularly when suffering from a migraine. Tr. 61-62.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's testimony concerning the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. In the following paragraphs, the ALJ summarizes the medical opinion evidence and assigns weight to the opinions of medical and lay sources, but does not clearly relate those findings back to specific portions of Plaintiff's testimony or explain why that evidence contradicts Plaintiff's testimony. Tr. 21-23.

In similar circumstances, the Ninth Circuit has held that such reasoning is insufficient and reviewing courts are not permitted to "comb the administrative record to find specific conflicts" supporting the ALJ's conclusion. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

> Our review of the ALJ's written decision reveals that she did not specifically identify any such inconsistencies [between the plaintiff's testimony and the record]; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of "specific reasons" we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited. . . . Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.

*Id.*

The Ninth Circuit further concluded that the ALJ's error was not harmless. *Id.* "Although the ALJ summarized a significant portion of the administrative record in support of her RFC determination, providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* (emphasis in original). Courts cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting a claimant's testimony where "the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Id.* (emphasis in original).

The present case is squarely analogous to *Brown-Hunter*. A summary of the medical evidence supporting an RFC determination is no substitute for *specific*, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony and this Court cannot trawl the record to make up the deficiency through its own findings. The ALJ erred by failing to provide adequate support for the rejection of Plaintiff's subjective symptom testimony and, consistent with *Brown-Hunter*, that error was not harmless.

### III. "Other" Medical Opinion Evidence

Plaintiff argues that the ALJ erred by discounting the opinion of her treating family nurse practitioner Laura Johnson. The ALJ is responsible for resolving conflicts in the medical record.

*Carmickle*, 533 F.3d at 1164. Under the then-operative regulations, the opinion of a nurse practitioner was considered an "other medical source," rather than an "acceptable medical source." *See Kimberly S. v. Comm'r*, No. 3:17-cv-01956-HZ, 2018 WL 6198275, at *4 (D. Or. Nov. 28, 2018) (summarizing regulatory developments in the consideration of the opinions of "other medical sources," such as physician assistants and nurse practitioners). The ALJ may reject the competent testimony of "other medical sources" for reasons germane to the witness. *Molina*, 674 F.3d at 1111. Germane reasons may include a finding that the testimony contradicts the witness's own earlier testimony or that of other medical specialists, or that the witness was biased. *Dale v. Colvin*, 823 F.3d 941, 944-45 (9th Cir. 2016).

In her medical source statements, Ms. Johnson reported that she had been Plaintiff's treating provider for eight years. Tr. 646-53. The first medical source statement from Ms. Johnson concerns Plaintiff's migraines. In that statement, Ms. Johnson reported that Plaintiff suffers from severe migraines accompanies by vertigo, nausea, vomiting, malaise, photophobia, throbbing pain, weight change, inability to concentrate, impaired sleep, exhaustion, phonophobia, visual disturbances, mood changes, mental confusion, and impaired appetite, all of which were exacerbated by activity. Tr. 646. Ms. Johnson reported that Plaintiff suffered from two or three migraines a week, lasting for 120 hours. *Id.* Plaintiff treated her migraines with Topamax, which decreased the frequency of the migraines, but Ms. Johnson believed the condition was "not likely to improve." Tr. 648.

In functional terms, Ms. Johnson believed that Plaintiff would need daily breaks of up to twelve hours so that Plaintiff could lie down and sit quietly. Tr. 648. Ms. Johnson believed that Plaintiff would be "off task" 25% or more of the time and would be absent from work four or more days per month. *Id.*

In the second statement, Ms. Johnson reported that Plaintiff suffered from thoracic disc displacement, thoracic disc prolapse, and peripheral neuropathy, which were "not likely to improve." Tr. 650. Plaintiff's symptoms included back pain, left arm pain, neuropathy, and weakness. *Id.* In terms of limitations, Ms. Johnson opined that Plaintiff could walk one city block. Tr. 651. Plaintiff could sit or stand for 20-30 minutes at a time before needing to change position and could sit or stand/walk for about four hours in an eight-hour workday. *Id.* She would need a job that permitted her to change position at will and allow her to spend five minutes walking around every half hour. *Id.* Ms. Johnson believed that Plaintiff would need a five-to-fifteen-minute break every hour to accommodate her muscle weakness and pain. *Id.* When seated, Plaintiff would need to elevate her legs due to neuropathy. Tr. 652.

Ms. Johnson opined that Plaintiff could rarely lift or carry less than ten pounds and never lift or carry a greater weight. Tr. 652. She could occasionally twist; rarely stoop; frequently crouch, squat, and climb stairs; and never climb ladders. *Id.* She would be unable to grasp or turn, perform fine manipulation, or over head reaching with her left hand and arm and would be limited to forward reaching only 10% of the time with the same arm. *Id.* She could do fine manipulation or overhead reaching 80% of the time with her right hand and arm, but she could only reach in front of her body between 30 and 45% of the time with her right arm. *Id.*

Ms. Johnson believed Plaintiff would be "off task" 25% or more of the time and that she would have good and bad days. Tr. 653. Ms. Johnson believed that Plaintiff's impairments would result in four or more absences per month. *Id.* Ms. Johnson opined that Plaintiff's pain was increased by work stress and she would be capable of low stress work. *Id.*

The ALJ gave partial weight to Ms. Johnson's opinion. Tr. 22-23. "The stated frequency and duration of the headaches described by Nurse Johnson is not consistent with other dates in the

record, such as visits with her mother, etc." Tr. 23. The ALJ gave weight to Ms. Johnson's assessment of Plaintiff's limitations on standing, walking, and sitting, but found that "the record is not consistent with her findings as to the excessive amount of breaks indicated in her opinion." *Id.* The ALJ also noted that the less-than-sedentary level of lifting was not supported by the overall record. *Id.*

The frequency and duration of headaches described by Ms. Johnson are extreme. Ms. Johnson reported two to three headaches a week with a typical duration of 120 hours, or five days each, which would indicate that Plaintiff is continuously suffering from debilitating migraines. This is contradicted by Plaintiff's own subjective symptom testimony concerning her migraines and would, as the ALJ noted, be inconsistent with Plaintiff's report of her activities. The Court concludes that the ALJ gave sufficient and germane reasons for rejecting Ms. Johnson's "other" medical source opinion.

## IV. Lay Opinion Evidence

Plaintiff asserts the ALJ erred by rejecting the lay witness testimony of Plaintiff's brother, Tracy B. Lay witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he or she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting a lay witness's testimony must also be "specific." *Stout*, 454 F.3d at 1054. When "the ALJ's error lies in a failure to properly discuss competent lay witness testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

In this case, Tracy B. completed a Third-Party Function Report for Plaintiff. Tr. 266. Tracy B. reported that Plaintiff was often unable to lift anything or get up and move. *Id.* He reported that Plaintiff sleeps for an hour or two at a time due to her pain. Tr. 267. He reported that Plaintiff cannot drive or go out alone because she gets dizzy. Tr. 269. Due to pain and numbness, Plaintiff has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, and using her hands. Tr. 271. Tracy B. also noted that Plaintiff does not like to leave the house. Tr. 272.

The ALJ gave little weight to Tracy B.'s opinion, noting that it was "not consistent with the record overall." Tr. 23. The ALJ considered Tracy B.'s opinion in connection with Plaintiff's subjective symptom testimony, noting that Tracy B.'s report mirrored Plaintiff's own subjective complaints. Tr. 20-21.

The Government argues that the ALJ properly discounted Tracy B.'s opinion for the same reason Plaintiff's subjective symptom testimony was discounted. However, as discussed in the preceding section, the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony. The Court concludes that the failure to give a *specific* germane reason for rejecting Tracy B.'s opinion was therefore also error.

V. **Remand**

In this case, the Court has determined that the ALJ's opinion contains non-harmless errors and so must determine whether remand should be for further proceedings or for award of benefits. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are

no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In this case, the ALJ erred by (1) failing to either credit the limitations assessed by Dr. Wilson or give legally sufficient reasons for rejecting them; (2) failing to make sufficiently specific findings concerning Plaintiff's subjective symptom testimony; and (3) failing to provide a specific germane reason for rejecting the lay witness testimony of Plaintiff's brother, Tracy B. Given the record, and particularly the equivocal nature of Dr. Wilson's opinion, the Court concludes that the appropriate remedy is a remand for further proceedings. On remand, the ALJ should:

(1) Credit the opinion of Dr. Wilson or give legally sufficient reasons for assigning limited weight to that opinion;

(2) Credit Plaintiff's subjective symptom testimony or give specific, clear, and convincing reasons for discounting that testimony; and

(3) Credit the lay witness testimony of Plaintiff's brother or give specific germane reasons for rejecting that testimony.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

It is so ORDERED and DATED this 27th day of January, 2020.

                                              s/Michael J. McShane
                                        MICHAEL McSHANE
                                        United States District Judge